**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
GREG LUBONTY

                  Appellant,

        -against-

R. KENNETH BARNARD, Chapter 7 Trustee,
ALS HIBISCUS, LLC, and the UNITED
STATES TRUSTEE

               Appellees.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
14-cv-3945 (ADS)

<u>**APPEARANCES:**</u>

**Lester & Associated, P.C.**
*Attorneys for the Appellant*
600 Old Country Road, Suite 229
Garden City, NY 11530
        By: Peter Kuldip Kamran, Esq., Of Counsel

**Lamonica Herbst & Maniscalco, LLP**
*Attorneys for the Appellee R. Kenneth Barnard*
3305 Jerusalem Avenue
Wantagh, NY 11793
        By: Gary F. Herbst, Esq.
           Melanie A Fitzgerald, Esq., Of Counsel

**Otterbourg P.C.**
*Attorneys for the Appellee ALS Hibiscus, LLC*
230 Park Avenue
New York, NY 10169
        By: Jennifer S. Feeney, Esq., Of Counsel

**Office of US Trustee**
560 Federal Plaza
Central Islip, NY 11722
        By: Stan Yuon Yang, Counsel to the United States Trustee

**SPATT, District Judge**.

On June 23, 2014, the Appellant Greg Lubonty ("Appellant") filed an appeal from a March 3, 2014 order (the "March 3, 2014 Order") by the United States Bankruptcy Court, Eastern District of New York (Trust, J.)  The March 3, 2014 Order approved the terms of an amended stipulation (the "Amended Stipulation") entered into on February 26, 2014 between ALS Hibiscus, LLC ("ALS") and R. Kenneth Barnard, as Chapter 7 Trustee of the Bankruptcy Estate (the "Trustee").  The Amended Stipulation, among other things, (i) granted ALS a secured claim against the Bankruptcy Estate in the amount of $4,655,412.45; (ii) granted the Trustee permission to sell the Appellant's residential property located in Miami Florida (the "Miami Property") under certain terms and conditions; (iii) permitted ALS to commence a foreclosure proceeding on the Miami Property; and (iv) adjourned a hearing on the Appellant's objection to ALS's secured claim against the Appellant's Bankruptcy Estate.

The Order was entered over the Appellant's objection, and this appeal followed.  For the reasons set forth below, the Bankruptcy Court's Order is affirmed.

## I. BACKGROUND

### A. The Underlying Facts

#### 1. The Mortgages on the Miami Property

On April 11, 2005, the Appellant executed a note and mortgage (collectively, the "Mortgage") in favor of the Wachovia Mortgage Corporation ("Wachovia") in the principal amount of $3,000,000 on the Appellant's Miami Property.  (App. Rec. 10, Ex. C.)  The mortgage has a maturity date of May 1, 2035.  The original principal amount due under the Mortgage was $3 million and interest accrued at a rate of 5.875% per year.  (Id.)

Wells Fargo held a second mortgage on the Miami Property in the amount of $550,000. (App. Rec. 17 at 75:11–17.)  The record does not specify the terms of the second mortgage, nor when the Appellant obtained the second mortgage.

From January 2007, the debtor has failed to make any payments on the Mortgage, nor has he paid any fees, taxes, insurance, or other expenses associated with the Miami Property.  (See App. Rec. 8, Ex. 1.)  On May 11, 2007, Wachovia commenced a mortgage foreclosure proceeding on the Miami Property in the Circuit Court of 11th Judicial District in Miami-Dade County, Florida.  (See id.)

At an unspecified time Wachovia assigned its interest in the Note to Wells Fargo Home Mortgage ("Wells Fargo").  (See App. Rec. 10, Ex. B.)  In a September 18, 2011 letter to the Appellant, Wells Fargo wrote that its records indicated that the Appellant was delinquent under the terms of the Mortgage in a total amount of $1,474,040.46 and that to "avoid the possibility of acceleration, you must pay this amount on or before October 18, 2011."  (Id.)

On January 8, 2011, the Eleventh Judicial Circuit dismissed the mortgage foreclosure proceeding without prejudice because Wachovia failed to appear at several case management conferences.  (See App. Rec. 8, Ex. 2.)

**2. The Bankruptcy Action**

 On October 19, 2011, the Appellant filed a voluntary petition with the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Action").  (App. Rec. 17 at Tr. 71:22–24–72:1.)  The case was assigned to United States Bankruptcy Judge Alan S. Trust. Pursuant to 11 U.S.C. § 362(a), any other actions to foreclose on the Miami property were stayed during the pendency of the Bankruptcy Action.

On April 2, 2012, Wells Fargo filed a secured proof of claim in the amount of $4,655,412.47.  (App. Rec. 1.)   Wells Fargo's claim became Claim No. 13 in the Bankruptcy Action. (<u>Id.</u>)

In their memoranda, both the Appellant and ALS state that Wells Fargo assigned the Mortgage and its claim in the Bankruptcy Action to BSI Financial Services, Inc. ("BSI").  (<u>See</u> The Appellant's Mem. of Law at 3–4; The Appellee's Mem. of Law at 5.)  Both parties also claim that on December 14, 2012, BSI filed a motion seeking relief from the automatic stay pursuant to 18 U.S.C. § 362(d) to foreclose on the Miami Property in a separate state court proceeding.  (<u>See</u> App. Rec. at Tr. 75:17–23.)  18 U.S.C. § 362(d) provides that a "party in interest" can make motion for relief from an automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."

However, the Court has not found any support in the appellate record for the parties' contention that Wells Fargo transferred its interest in the Mortgage to BSI.  To the contrary, a document entitled, "Corporate Assignment of Mortgage," dated August 28, 2012, indicates that Wells Fargo assigned the Mortgage to MCM Capital Partners LLC ("MCM").  (App. Rec. 1, at p. 32.)  Another document entitled, "Assignment of Mortgage/Security Deed/Deed of Trust", states that on October 28, 2012, the Mortgage was assigned by MCM to Newbury Place REO IV, LLC ("Newbury").  (<u>Id.</u> at p. 40.)  BSI is not indicated anywhere in these documents, nor do the parties clarify what, if any, relationship MCM or Newbury had to BSI.

Despite these inconsistencies, it is clear from the record, and the parties appear to agree, that on June 10, 2013, Newbury assigned the Mortgage to the Appellee ALS.  (App. Rec. 2.)

On June 20, 2013, ALS filed a motion seeking entry of an order converting the case from a Chapter 11 action to a Chapter 7 action.  (App. Rec. 4, at p. 3.)

4

On the same day, Judge Trust "so ordered" a stipulation pursuant to which ALS and the Appellant agreed that ALS's claim would be fixed in the amount of $4,378,209.67 subject to the Bankruptcy Court's determination of the value of the Miami Property. (App. Rec. 3, at ¶ 3.)

On July 2, 2013, Judge Trust granted the motion by ALS and converted the case to a Chapter 7 action because the court found that a conversion was in the "best interests of creditor and the estate under 11 U.S.C. § 1112(b)(1)." (Id.) On the same day, Judge Trust appointed Appellee Barnard as the interim Trustee of the Appellant's Estate. (App. Rec. 5.) Barnard later became the permanent trustee of the Appellant's Estate; however, the record does not specify when he was so appointed.

On July 3, 2013, Judge Trust granted permission to ALS to commence a foreclosure proceeding on the Miami Property. (See Feb. 3, 2014 Hearing Tr. 75:17–23.) Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." As such, the order lifting the automatic stay did not become effective until July 18, 2013. (See App. Rec. 17 at Tr. 75:17–23.)

On October 7, 2013, ALS filed a proof of claim amending Claim No. 13 in the Bankruptcy Action. (App. Rec. 9, Ex. 1.) The proof of claim sought to amend the total amount due to ALS under the Note from $4,378,209.67 to $4,586,884.16 "plus certain other fees, expenses, indemnification claims, and interest." (Id.) The Bankruptcy Court assigned Claim No. 18 in the Bankruptcy Action to ALS. (Id.)

### 3. The Original Stipulation to Sell the Miami Property

On December 4, 2013, the Trustee and ALS entered into a stipulation regarding the sale of the Miami Property (the "Original Stipulation"). (App. Rec. 6.) The Original Stipulation provided that:

> (i) ALS would have an "allowed claim" in the amount of $4,586,884.16 and if the Trustee sells the Miami Property for more than that amount, "interest and fees accrued and accruing since the Petition Date until the date that the ALS Claim is paid"; (ii) the Trustee would proceed with the sale and marketing of the Miami Property; and (iii) ALS agreed to "carve out from the proceeds of the sale of the Miami Property" in the amount of $125,000 for the Trustee to use in its discretion to pay out other claims on the Bankruptcy Estate and costs and commissions related to closing the transaction.

(Id.) On December 20, 2013, the Trustee filed a motion for entry of an order approving the Original Stipulation. (Id.)

### 4. The Appellant's Objection to the Original Stipulation and ALS's Claim

On January 2, 2014, the Appellant filed a motion objecting to the Original Stipulation. (App. Rec. 8

On January 3, 2014, the Appellant filed an objection to ALS's Claim No. 18 asserting the same objections as he did in his motion objecting to the Original Stipulation. (Id.)

On January 31, 2014, the Trustee and ALS filed an amended stipulation regarding the sale of the Miami Property (the "Amended Stipulation"). The Amended Stipulation, increased the "Carve-Out" for the Bankruptcy Estate from $125,000 to $250,000. (App. Rec. 19, at ¶ 5.) It also provided several additional terms, including that "[i]n the event that the Miami Property sells for a purchase price in excess of $5,000,000, the estate and ALS will share the additional funds in a 50%/50% division." (Id. at ¶ 6.) The Amended Stipulation further provided that "ALS would be authorized and allowed to commence

and or continue its foreclosure action on the [Miami] Property up to the point of sale."
(Id. at ¶ 8.)

In support of the Amended Stipulation, the Trustee filed a declaration stating that both the Original and Amended Stipulation were "products of arms-length negotiations between the Parties and . . . were entered into in good faith." (App. Rec. 15, at ¶ 15.) The Trustee also represents that, "I believe that the terms of the Revised Stipulation provide an immediate cost savings and benefit to the estate as there is a guaranty of payment, through the Carve-Out, and the estate will not be testing the real estate waters at a cost that may not be recouped on a low sales price and which would otherwise be charged to the estate at the expense of the creditors." (Id. at ¶ 17.) As such, the Trustee concluded that "in my best business judgment . . . the terms and conditions of the Revised Stipulation are reasonable and within the best interest of the Debtor's estate and its creditors." (Id. at ¶ 18.)

**5. The February 3, 2014 Hearing**

On February 3, 2014, Judge Trust held a hearing to decide the motion by ALS for approval of the Amended Stipulation and to address the Appellant's objection. Present at the hearing were counsel for the Trustee, the Appellant, and ALS. (App. Rec. 17.) Judge Trust heard oral argument from ALS and the Appellant. (Id. at Tr. 1–17; 56–71.) The court treated the Trustee's Declaration as his direct testimony and permitted counsel for the Appellant to cross-examine the Trustee. (Id. at Tr. 17–53.)

At the hearing, the Appellant argued that Judge Trust should reject the Amended Stipulation and wait to sell the Miami Property until the Appellant's objection to ALS's claim for $4,586,884.16 is resolved. (Id. Tr. 68:3–6.) Although the Amended Stipulation guarantees

that the Bankruptcy Estate would receive $250,000 from the sale of the Miami Property, the

Appellant asserted that the Bankruptcy Estate could receive more money if the Appellant is

successful in extinguishing ALS's $4,586,884.16 claim on the Miami Property.  (Id.) Thus, the

Appellant argued that the Trustee would be better off waiting to sell the Miami Property than

proceeding with the sale under the conditions provided for in the Amended Stipulation. (Id. at

69:6–12.)

Judge Trust rejected the Appellant's argument because it did not find the Appellant's

objection to be meritorious.  (Id. at 76:1–5.)  Judge Trust noted that the Appellant's argument is

premised on his contention that the statute of limitations had expired on ALS's foreclosure claim

pursuant to Fla. Stat. §§ 95.11(2)(b), which provides that "an action to foreclose a mortgage"

must commence within five years.  (Id.)  The Bankruptcy Court found this argument problematic

for two reasons.

First, Judge Trust concluded that it is not clear whether the statute of limitations is tolled

during the pendency of the automatic stay, and thus ALS's foreclosure claim may not be time-

barred.  (Id. at Tr. 79:1–8.)  However, the court declined to decide the issue because the "parties

didn't provide any briefing on that issue."  (Id.)

Second, the court found that even if the five-year statute of limitations on foreclosing the

Miami Property had expired, ALS still had a valid lien on the Miami Property pursuant to Fla.

Stat. Ann. § 95.281, which provides:

> (1) The lien of a mortgage or other instrument encumbering real property, herein
> called mortgage, except those specified in subsection (5), shall terminate after the
> expiration of the following periods of time:
>
>> (a) If the final maturity of an obligation secured by a mortgage is
>> ascertainable from the record of it, 5 years after the date of maturity.

> (b) If the final maturity of an obligation secured by a mortgage is not ascertainable from the record of it, 20 years after the date of the mortgage[.]

Fla. Stat. Ann. § 95.281 (West).

Since the stated maturity on the Wachovia mortgage was May 1, 2035, the court found that under Florida Statute Section 95.281, the "lien now held by ALS is valid under Florida law until May of 2040." (App. Rec. 17 at Tr. 77:2–8.) Thus, even if ALS could not foreclose on the Miami Property, it still had a valid and enforceable lien on the property pursuant to Fla. Stat. Ann. § 95.281. (Id. at Tr. 79:14–24) For example, 11 U.S.C. § 363(f) provides that the Trustee can sell a property "free and clear of [any] interest in such property" according to certain conditions. Judge Trust noted that were the Trustee to sell the Miami Property pursuant to 11 U.S.C. § 363(f), ALS, as a holder of the first mortgage, would be entitled to the proceeds of the sale up to the $4,586,884.16 due under the Mortgage. (Id.) In this way, the court reasoned that ALS could still enforce its claim against the Miami Property without foreclosing on it. (Id.)

Turning to the merits of the Amended Stipulation, Judge Trust noted that "there's no evidence [the Trustee would] be able to sell [the Miami Property] for more than the outstanding amount of the two mortgages of record against the property." (Id. at Tr. 80:12–20.) Judge Trust indicated that there had been some controversy as to the value of the Miami Property. (Id.) At one time BSI, ALS's apparent predecessor in interest, argued that the property was worth $4.2 million but no party had ever argued that the Miami Property was worth more than the nearly $5 million it would take to settle the claims on the Miami Property under the first and second mortgages. (Id. at Tr. 80:1–12.) Thus, Judge Trust concluded that there was a substantial risk that the Bankruptcy Estate would receive nothing if the Miami Property sold for less than $5 million. Given the uncertainty in the sales value of the Miami Property, Judge Trust concluded

that the Amended Stipulation was "within the range of reasonableness" because it provided a carve-out that guaranteed that the Bankruptcy Estate $250,000 in proceeds from the sale of the Miami Property.  (Id. at Tr. 81:8–15.)

Thus, the Bankruptcy Court approved the Amended Stipulation subject to several minor modifications.  (Id. at Tr. 81:1–15.)

On March 3, 2014, the Bankruptcy Court entered an order approving the Amended Stipulation, which was revised slightly to be consistent with Judge Trust's ruling at the February 3, 2014 hearing.

**B. Procedural Background**

On June 23, 2014, the Appellant appealed from the March 3, 2014 Order by Judge Trust approving the Amended Stipulation. The Appellant asserts that the Bankruptcy Court erred in approving the Amended Stipulation authorizing the sale of the Miami Property.  He contends that the Bankruptcy Estate could have obtained a better deal if it had waited to sell the property until the Bankruptcy Court ruled on the Appellant's objection to ALS's $4,655,412.45 claim on the Miami Property.  (Reply Mem. of Law at 10.)  This argument relies on the premise that the Appellant's objection to the claim by ALS — namely, that ALS does not have a valid and enforceable lien on the Miami Property because the five year statute of limitations on foreclosure actions Fla. Stat. §§ 95.11(2)(b) had expired — is likely to succeed.

However, the Bankruptcy Court found that the Appellant's objection was not likely to succeed because (i) it is not clear under Florida law whether the statute of limitations had been tolled during the pendency of the Bankruptcy Action; and (ii) even if ALS was barred from commencing a foreclosure action pursuant to Fla. Stat. §§ 95.11(2)(b), ALS still has a valid and

enforceable lien on the Miami Property pursuant to Fla. Stat. Ann. § 95.281. (App. Rec. 17 at Tr. 79:14–24.)

The Court need not reach the first issue because it finds that the Bankruptcy Court did not err with respect to the second issue.

## II. DISCUSSION

### A. Legal Standards

This Court has jurisdiction to hear an appeal from a decision of a bankruptcy court pursuant to 28 U.S.C. § 158(a). Section 158(a) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; ... [and,] with leave of court, from other interlocutory orders and decrees . . . of bankruptcy judges."

When reviewing a bankruptcy court's decision, its "factual findings will be upheld unless clearly erroneous, and its legal conclusions are reviewed *de novo*." In re Flanagan, 503 F.3d 171, 179 (2d Cir. 2007); see also In re Overbaugh, 559 F.3d 125, 129 (2d Cir. 2009) ("We review the bankruptcy court's factual findings for clear error, and its legal conclusions de novo.") (citation omitted). "Mixed questions of law and fact are reviewed 'either de novo or under the clearly erroneous standard depending on whether the question is predominantly legal or factual.'" In re Grubb & Ellis Co., 523 B.R. 423, 437 (S.D.N.Y. 2014) (quoting Italian Colors Rest. v. Am. Express Travel Related Servs. Co., 554 F.3d 300, 316 n. 11 (2d Cir. 2009), *vacated on other grounds by*, Am. Exp. Co. v. Italian Colors Rest., 130 S. Ct. 2401, 176 L. Ed. 2d 920 (2010)).

However, the standard of review differs with respect to orders by a bankruptcy court pursuant to Fed. R. Bankr. P. 9019. Pursuant to Fed. R. Bankr. P. 9019, a bankruptcy court may "on motion by the trustee and after notice and hearing" "approve a compromise or settlement."

In the present case, the Bankruptcy Court approved the Amended Stipulation pursuant to Rule 9019 upon motion by the Trustee, notice, and a hearing. In particular, at the February 3, 2014 hearing, the Bankruptcy Court noted: "[T]he settlement falls within the range of reasonableness under Rule 9019[.]" (See App. Rec. 17 at Tr. 74:5–13.)

Courts in this Circuit have considered the following factors in assessing the reasonableness of a proposed settlement:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, 'with its attendant expense, inconvenience, and delay,' including the difficulty in collecting on the judgment; (3) 'the paramount interests of the creditors,' including each affected class's relative benefits 'and the degree to which creditors either do not object to or affirmatively support the proposed settlement'; (4) whether other parties in interest support the settlement; (5) the 'competency and experience of counsel' supporting, and '[t]he experience and knowledge of the bankruptcy court judge' reviewing, the settlement; (6) 'the nature and breadth of releases to be obtained by officers and directors'; and (7) 'the extent to which the settlement is the product of arm's length bargaining.'

In re Iridium Operating LLC, 478 F.3d 452, 462 (2d Cir. 2007) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)); see also In re Leatherstocking Antiques, Inc., No. 13 CIV. 5609 (ER), 2014 WL 3585511, at *5 (S.D.N.Y. July 21, 2014).

When reviewing a bankruptcy court's approval of a settlement on appeal, the district court reviews "the legal standards applicable to the evaluation of a settlement under Bankruptcy Rule 9019 *de novo*" and the bankruptcy court's application of those principles for "abuse of discretion." In re Refco Inc., 505 F.3d 109, 116 (2d Cir. 2007) (citing In re Iridium Operating LLC, 478 F.3d 452, 461 n. 13 (2d Cir. 2007)); see also In re Osborne, No. 13-CV-8211 CS, 2014 WL 2738558, at *2 (S.D.N.Y. June 17, 2014) ("A bankruptcy court's decision approving a settlement under Bankruptcy Rule 9019 is reviewed for abuse of discretion.") (citing In re Refco Inc., 505 F.3d at 116); In re Leatherstocking Antiques, Inc., No. 13 CIV. 5609 (ER), 2014 WL

3585511, at *4 (S.D.N.Y. July 21, 2014) ("A bankruptcy court's articulation of the legal standard used to evaluate the settlement is a matter of law to be reviewed *de novo* on appeal, while the court's application of those legal principles — in other words, its decision to approve the particular settlement at hand — is reviewable only for abuse of discretion.").

Abuse of discretion is a relatively low standard to meet — "[a]n abuse of discretion . . . may be found only if 'no reasonable man could agree with the decision' to approve the settlement." In re Homesteads Cmty. at Newtown, LLC, No. 3:13-CV-00602 (CSH), 2014 WL 7895746, at *4 (D. Conn. July 31, 2014) (quoting In re E. 44th Realty, LLC, No. 05 BR. 16167 (RDD), 2008 WL 217103, at *6 (S.D.N.Y. Jan. 23, 2008)); see also In re Delta Air Lines, Inc., 374 B.R. 516, 522 (S.D.N.Y. 2007) ("'The bankruptcy court will have abused its discretion if 'no reasonable man could agree with the decision' to approve a settlement.") (quoting In re Frost Bros., Inc., 91 Civ. 5244, 1992 WL 373488, at *4 (S.D.N.Y. Dec.2, 1992)).

At the outset, the Court notes that it is not entirely clear what standard of review is applicable to the Appellant's argument on appeal. As described above, the Appellant challenges the conclusion by the Bankruptcy Court that ALS has a valid and enforceable lien. This conclusion could be viewed as a part of the Bankruptcy Court's evaluation of the merits of the Amended Stipulation, in which case the Court would review the March 3, 2014 Order for abuse of discretion. However, the Bankruptcy Court's finding might also be viewed as a conclusion of law, in which case the Court would review the March 3, 2014 Order *de novo*. Out of an abundance of caution, the Court will review the Bankruptcy Court's conclusion that ALS has a valid and enforceable lien on the Miami Property *de novo*.

**B. As to Whether ALS Has a Valid and Enforceable Lien on the Miami Property**

The Appellant argues that ALS does not have a valid and enforceable lien on the Miami Property because ALS is time-barred under Fla. Stat. § 95.11(2)(b) from foreclosing on the property.

Fla. Stat. § 95.11(2)(b) provides that "an action to foreclose a mortgage" must commence within five years. Under Florida law, the statute of limitations on foreclosure actions does not begin to run on the mortgage holder until the last payment of the mortgage is due. Matos v. Bank of New York, No. 14-21954-CIV (FAM), 2014 WL 3734578, at *2 (S.D. Fla. July 28, 2014) ("That statute of limitations does not begin to run until the last payment of the mortgage is due[.]") (citing Locke v. State Farm Fire & Casualty Co., 509 So.2d 1375, 1377 (Fla. Dist. Ct. App. 1987)); see also Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575 (KEM), 2014 WL 7156961, at *3 (Fla. Dist. Ct. App. Dec. 17, 2014) ("The statute of limitations begins to run when a cause of action accrues, and [a] cause of action accrues when the last element constituting the cause of action occurs.") (quoting City of Riviera Beach v. Reed, 987 So.2d 168, 170 (Fla. Dist. Ct. App. 2008)).

However, where, as here, the mortgage contains a clause permitting the mortgage holder to accelerate the amount due, the statute of limitations may commence when the creditor "takes affirmative action and advises the debtor that acceleration option has been exercised." Matos v. Bank of New York, 2014 WL 3734578 at *2 (citing Greene v. Bursey, 733 So.2d 1111, 1114–15 (Fla. Dist. Ct. App. 1999)); see also Smith v. F.D.I.C., 61 F.3d 1552, 1561 (11th Cir. 1995) ("When the promissory note secured by the mortgage contains an optional acceleration clause,

the foreclosure cause of action accrues, and the statute of limitations begins to run, on the date

the acceleration clause is invoked or the stated date of maturity, whichever is earlier.").

The Appellant contends that Wachovia, a predecessor to ALS, accelerated the mortgage

on May 11, 2007 when it initiated a foreclosure action in the Circuit Court of the Eleventh

Judicial District in Miami-Dade County.  (The Appellant's Mem. of Law at 9.)  Thus, according

to the Appellant, the statute of limitations on ALS's foreclosure claim ran from May 11, 2007

through May 11, 2012.  (Id.)

On October 19, 2011, the Appellant filed a voluntary bankruptcy petition before this

Court.  Pursuant to the provisions of 11 U.S.C. § 362, the filing of a voluntary bankruptcy

petitions results in an automatic stay of "any act to create, perfect, or enforce any lien against

property of the estate."  Thus, the bankruptcy petition precluded ALS from foreclosing on the

Miami Property during the pendency of the Bankruptcy Action.  According to the Appellant, the

statute of limitations on ALS's foreclosure claim was not tolled during the pendency of the

automatic stay and expired on May 11, 2012.  (The Appellant's Mem. of Law at 9.)

However, pursuant to the section of 11 U.S.C. § 108(c)(2), a creditor can bring a

claim whose statute of limitations has expired during the pendency of an automatic stay

"within 30 days after notice of the termination or expiration of the stay."  On July 3,

2013, Judge Trust issued an order lifting the stay so that ALS could pursue a foreclosure

claim on the Miami Property.  (See Feb. 3, 2014 Hearing Tr. 75:17–23.)  This Order

became effective on July 18, 2013.  (Id.)   ALS failed to commence a foreclosure

proceeding on the Miami Property within 30 days of July 18, 2013, when the stay was

lifted.   Thus, the Appellant contends that ALS does not have a valid claim with respect

to the Miami Property because ALS is time-barred from initiating a foreclosure proceeding to enforce the Mortgage. (Id. at ¶ 24.)

Judge Trust rejected the Appellant's argument because it found that even if ALS's foreclosure claim was time-barred pursuant to § 95.11(2)(b), ALS still had a valid and enforceable lien against the Miami Property under Fla. Stat. Ann. § 95.281. (App. Rec. 17 at Tr. 76:6–13.)

As stated above, Fla. Stat. § 95.281 provides, in relevant part, that a "lien of mortgage" "shall terminate after the expiration" of "5 years after the date of maturity" "ascertainable from the record [of the mortgage]." The Mortgage held by ALS has a maturity date of May 1, 2035. (App. Rec. 17 at Tr. 77:2–8.) Thus, ALS's lien on the Miami Property secured by the Mortgage is valid under the provisions of § 95.281 until May 1, 2040. (Id.)

In so holding, Judge Trust relied on Houck Corp. v. New River Ltd., 900 So.2d 601 (Fla. Dist. Ct. App. 2d Dist. 2005). There, a mortgage holder appealed a trial court's decision to dismiss its foreclosure action against a homeowner as time-barred under the five-year statute of limitations set forth in Fla. Stat. § 95.11(2)(c). Id. at 602. On appeal, the mortgage holder argued that Fla. Stat. § 95.281, which sets forth a twenty year period of limitations, was the applicable statute of limitations and thus, his foreclosure claim was not time-barred. Id.

The state appellate court rejected the mortgage holder's argument because it found that Fla. Stat. § 95.281 is a "statute of repose," which governs the validity of the lien and not the time period for when a plaintiff can enforce that lien through foreclosure. Id. at 603 ("Section 95.281(1)(b), conversely, establishes an ultimate date when the lien

of the mortgage terminates and is no longer enforceable.").  On the other hand, the court

found that section 95.11(2)(c), is a "statute of  limitations" that governs when a note

holder can initiate a foreclosure action.  Id.  ("A 'statute of limitations' is a procedural

statute that prevents the enforcement of a cause of action that has accrued . . . It does not

determine the underlying merits of the claim but merely cuts off the right to file suit on

that claim.") (citing Allie v. Ionata, 503 So.2d 1237, 1240-41 (Fla. 1987)).

Thus, the appellate court in Houck affirmed the trial court's decision to apply a

five-year statute of limitations under Section 95.11(2)(c) to the mortgage holder's

foreclosure claim, and not the 20 year limitation provided in Fla. Stat. § 95.281.  Id. at

605.  However, the appellate court noted in *dicta* that even though the mortgage holder

could not foreclose on the property, it still had a valid lien on the property which it could

enforce in the event that the homeowner decided to sell the property.  See id. ("Thus,

when the mortgage was assigned to Houck in 2003, Houck had no legal recourse to

collect the debt secured by the mortgage; its only recourse would have been to enforce

the lien in the event New River attempted to sell the property before November 1,

2004.").

Other Florida courts have relied on this *dicta* in Houck to dismiss quiet title claims made

to extinguish a mortgage holder's lien on a property on the ground that the five-year statute of

limitations period for foreclosure actions had expired.  For example, in Matos v. Bank of New

York, No. 14-21954-CIV (FAM), 2014 WL 3734578, at *1 (S.D. Fla. July 28, 2014), a property

owner commenced a quiet title action against a mortgage holder alleging that the five-year

statute of limitations under Section 95.11(2)(c) for pursuing a foreclosure action had expired, and

therefore, the court should extinguish the mortgage holder's lien against the property.  In

granting the mortgage holder's motion to dismiss the claim, the court noted that the mortgage had a maturity date of September 1, 2036.  Id. at *3.

Thus, the court found that the under Section 95.281, the mortgage holder had a valid and enforceable lien until September 1, 2041 — five years after the maturity date contained in the recorded mortgage.  Id.  Therefore, even if the statute of limitations on foreclosure actions had expired, the court found that the mortgage holder's lien "continues to exist" and cannot be extinguished by a quiet title action.  See id.  ("So regardless of the statute of limitations, [the mortgage holder] is entitled to judgment against the [property holder] because its lien continues to exist until barred by the statute of repose contained in Florida Statutes § 95.281(1).");  see also St. Louis Condo. Ass'n, Inc. v. Nationstar Mortgage LLC, No. 14-21827-CIV, 2014 WL 6694780, at *2 (S.D. Fla. Nov. 26, 2014) ("The express maturity date of the Note and Mortgage is November 1, 2036 . . . . Accordingly, the Mortgage lien will not terminate until 2041 and [the] [p]laintiff's quiet title action is without merit.");  Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575, 2014 WL 7156961 (KME), at *11 (Fla. Dist. Ct. App. Dec. 17, 2014) (reversing the decision by a trial court that a lien was null and void because the five year statute of limitations on foreclosure actions expired, reasoning that "pursuant to section 95.281(1)(a), the mortgage lien remains valid until March 1, 2041, five years from the date of maturity as reflected in the recorded mortgage securing the obligation.").

Here, as in Matos, the Mortgage on the Miami Property has a maturity date of May 1, 2035.  (App. Rec. 10, Ex. C.)  As such, under Fla. Stat. § 95.281, which provides that lien on a mortgage shall not expire until five years after the date of maturity, ALS has a valid lien on the Miami Property until May 1, 2040.  Thus, even if the five year statute of limitations under Section 95.11(2)(c) barred ALS from foreclosing on the Miami Property, it did not render its

18

claim against the Bankruptcy Estate under the Mortgage invalid or unenforceable.  See Matos,

2014 WL 3734578 ("So regardless of the statute of limitations, BONY is entitled to judgment

against the Plaintiffs because its lien continues to exist until barred by the statute of repose

contained in Florida Statutes § 95.281(1)."); Houck, 900 So. 2d at 603 ("The limitations period

provided in section 95.11(2)(c) does not affect the life of the lien or extinguish the debt; it merely

precludes an action to collect the debt after five years.").

        The Appellant contends that even if ALS has a valid lien on the Miami Property, ALS

cannot enforce the lien because ALS is time-barred from foreclosing on the Miami Property.

(The Appellant's Mem. of Law at 10.)  In so arguing, the Appellant relies on In re Wilder, 178

B.R. 174 (Bankr. E.D. Mo. 1995).  In that case, a state agency overpaid a debtor in public

assistance funds.  After discovering the overpayment, the agency filed a motion in the debtor's

bankruptcy proceeding requesting a judgment that the money paid to the debtor was a non-

dischargeable debt pursuant to 11 U.S.C. § 523(a)(2).  Id.  The court dismissed the state agency's

claim because the statute of limitations for making a claim under 11 U.S.C. § 523(a)(2) had

expired.  Id.  The court reasoned that the "expiration of the statute of limitations extinguished the

[state agency's] right to enforce this obligation owed to it by the Debtor.  Absent an enforceable

obligation, there is no right to payment."  Id.

        Here, by contrast, ALS seeks to enforce a lien arising out of a mortgage.  As described

above, it is well-established that under Florida law the five year statute of limitations governing

foreclosure actions does not otherwise affect the validity or enforceability of a lien created by a

mortgage.  See Houck Corp., 900 So. 2d at 603 (Fla. Dist. Ct. App. 2005) ("The limitations

period provided in section 95.11(2)(c) does not affect the life of the lien or extinguish the debt; it

merely precludes an action to collect the debt after five years.").  Thus, here, unlike in In re

Wilder where the plaintiff had no other method to enforcing its debt, ALS has other avenues to enforce the Mortgage even if it is time-barred from initiating foreclosure proceedings. See Kaan v. Wells Fargo Bank, N.A., 981 F. Supp. 2d 1271, 1274 (S.D. Fla. 2013) ("Even if the statute of limitations barred foreclosure due to payment defaults within the last five years, the lien would still be enforceable if Plaintiff breaches or defaults in other ways."); Houck Corp., 900 So. 2d at 605 (finding that the mortgage holder had "legal recourse" "to enforce the lien" even without foreclosing on the property "in the event [the debtor] attempted to sell the property before November 1, 2004.").

For example, as the Bankruptcy Court correctly noted, if the Trustee were to sell the Miami Property, ALS, as a holder of the first mortgage, would still be entitled to the first $4,655,412.45 in proceeds generated by the sale of the property. (See App. Rec. 17 at Tri. 79:16–21) ("There's no controversy from this Court's vantage point as to whether or not ALS's lien continues to be a valid lien, if not unenforceable by foreclosure meaning that absent this settlement if the trustee were to seek to sell the Miami property."). Thus, ALS continues to have a valid and enforceable claim against the Bankruptcy Estate under the Mortgage irrespective of the five-year statute of limitations on the foreclosure actions. Accordingly, the Court finds In re Wilder to be inapplicable to this Appeal.

Therefore, for the foregoing reasons, the Court finds that the Bankruptcy Court was correct in overruling the Appellant's objection and finding that ALS has a valid and enforceable claim against the Miami Property in the amount of $4,655,412.45.

## C. As to Whether the Bankruptcy Court Otherwise Abused Its Discretion in Approving the Amended Stipulation

It is not clear whether the Appellant objects to the Bankruptcy Court's March 3, 2014 Order approving of the Amended Stipulation for reasons other than those discussed above —

namely, that the Bankruptcy Court erred in finding that ALS has a valid and enforceable claim against the Miami Property. However, to the extent the Appellant does so object, the Court finds that the Bankruptcy Court did not abuse its discretion in approving the Amended Stipulation.

As described above, pursuant to Fed. R. Bankr. P. 9019, a Bankruptcy Court can approve a stipulation or settlement after notice and a hearing provided that it "canvass[es] the issues and see[s] whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" In re W.T. Grant Co., 699 F.2d at 608; see also In re Residential Capital, LLC, 2015 WL 739829 at *7 n. 6 ("[T]he Bankruptcy Court was not required to comprehensively review the settlement, only to determine that it did not fall beneath the lowest level of reasonableness.").

When reviewing a bankruptcy court's approval of a settlement on appeal, the Court reviews "the legal standards applicable to the evaluation of a settlement under Bankruptcy Rule 9019 *de novo*" and the bankruptcy court's application of those principles to the settlement for "abuse of discretion." In re Refco Inc., 505 F.3d at 116 (2d Cir. 2007) (citing In re Iridium Operating LLC, 478 F.3d at 461 n. 13).

As an initial matter, the Court notes that Judge Trust explicitly considered the "reasonableness" of the Amended Stipulation in light of the required factors described above. Therefore, the Court finds that Judge Trust applied the correct legal standard in considering the merits of the Amended Stipulation. See, e.g., Alford v. Dribusch, No. 1:14-CV-558 (DNH), 2014 WL 7243321, at *3 (N.D.N.Y. Dec. 19, 2014) ("As an initial matter, the bankruptcy court expressly acknowledged the governing legal standard-noting its conclusion that the Trustee's proposal was 'well within the range of reasonableness under the 2nd Circuit test.'").

Moreover, the Court finds that Judge Trust did not abuse his discretion in applying these principles in assessing the terms of the Amended Stipulation. In his decision Judge Trust

touched upon many of the factors that bankruptcy courts in this Circuit have considered when assessing a settlement or stipulation, such as, the balance between the litigation's possibility of success and the settlement's future benefits"; "the paramount interests of the creditors'; and "the extent to which the settlement is the product of arm's length bargaining." In re Iridium Operating LLC, 478 F.3d at 462 (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

In particular, Judge Trust considered evidence that the Miami Property may not be worth more than the amount of the two existing mortgages on the property: "So it would appear to the Court that there is a substantial hurdle faced by the trustee for him to . . . reduce the property of the estate to cash for distributive purposes. He might be able to sell it, but there's no evidence he'd be able to sell it for more than the outstanding amount of the two mortgages of record against the property." (App. Rec. 17 at Tr. 80:13–20.) On the other hand, the Bankruptcy Court noted that the Amended Stipulation provided the Bankruptcy Estate with a guaranteed $250,000 from the sale of the Miami Property. (Id. at Tr. 81:8–15.) Weighing the uncertainty in the sale value of the Miami Property against the benefit to the Bankruptcy Estate of a guaranteed $250,000, Judge Trust found that the Amended Stipulation to be "within the range of reasonableness under Rule 9019" and "a proper exercise by the [T]rustee of his business judgment." (Id. at Tr. 74:5–13.)

Nothing in the record or in the arguments presently before the Court undermines the reasonableness of the Bankruptcy Court's consideration and approval of the Amended Stipulation. See In re Leatherstocking Antiques, Inc., 2014 WL 3585511, at *6 ("In short, nothing in the record below or in the arguments presently before the [c]ourt undermines the reasonableness of the [t]rustee's decision to enter into-let alone the Bankruptcy Court's approval

of-the Winston Stipulation."); <u>Alford v. Dribusch</u>, No. 1:14-CV-558 (DNH), 2014 WL 7243321, at *3 (N.D.N.Y. Dec. 19, 2014) ("[T]he bankruptcy court fulfilled its obligation to consider the appropriate factors in balancing the value of further litigation against the realistic benefits of the settlement proposal. Accordingly, the bankruptcy court's February 12, 2014 order approving the [t]rustee's proposed settlement will be affirmed.").

As the Court finds no infirmity in the March 3, 2014 Order approving the Amended Stipulation, the Court affirms the decision below.

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the March 3, 2014 Order is affirmed. The Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
March 21, 2015

  _/s/ Arthur D. Spatt____
   ARTHUR D. SPATT
   United States District Judge